**168 So. 780**

**HUNTER v. RECTOR, WARDENS AND VESTRYMEN OF ST. ANNA'S CHAPEL.**

**No. 33360.**

**May 25, 1936.**

J. Zach Spearing, of New Orleans, for appellant.

Buck, Walshe & Buck, John A. Woodville, and McLoughlin & West, all of New Orleans, for appellee.

ODOM, Justice.

This case was last before us in July, 1933. See Hunter v. Rector, Wardens and Vestrymen of St. Anna's Chapel, 177 La. 968, 149 So. 537, 538, where the issues involved were fully stated. In that case we said: "On the merits, the evidence appears to sustain the judgment so far as it fixed the amount of plaintiff's claim." What we meant was that the testimony

supported plaintiff's claim as to the amount of back salary due plaintiff as rector of St. Anna's Chapel.

We remanded the case in order that the defendant might introduce testimony in support of its plea that plaintiff's claim had been extinguished by compensation. The plea or defense made by defendant was that plaintiff had collected and appropriated to his own use and benefit large sums of money which belonged to the church, said sums being in excess of the amount claimed by plaintiff on salary account. Plaintiff admits that he collected and appropriated to his own use and benefit the rents and revenues from certain property in New Orleans for which he has given the church no credit, his claim being that he was entitled to such revenues as he collected and that he owed the church no accounting therefor. The claim of the church is that the rents and revenues from said property belonged to it and not the plaintiff and that he should account now for the amounts collected.

If the amounts so collected by plaintiff belonged to him individually, then the church owes him the amount which he claims. If, on the other hand, the amounts collected by plaintiff as revenues from this property belonged to the church, it now owes plaintiff nothing, because the amounts collected equal or exceed the balance due on plaintiff's salary.

There was judgment for the plaintiff, and defendant appealed.

The defendant St. Anna's Chapel is a religious corporation chartered under the laws of Louisiana in 1898. The purpose and objects of the corporation, as set forth in its charter, are "the worship and service of Almighty God according to the rites and discipline of the Protestant-Episcopal Church of the United States of America." The officers of the corporation consist of a rector, two wardens, and five vestrymen, who administer its affairs and are vested with all the corporate powers of the corporation.

The record discloses that this Episcopal Church was in existence under the same name long before it obtained this charter in 1898. On December 31, 1872, Dr. W. Newton Mercer, who seems to have been a devout Episcopalian and who was a member of the Episcopal Church known as St. Anna's Chapel, made his will reading as follows:

"I hereby give and bequeath unto the present Rector of the St. Anna Chappel situate on Esplanade street, in this city, and to his successor in office forever, the annual sum of Two Thousand Four Hundred Dollars, to be taken out of the rent of store No. 57 Carondelet Street, in this city, and from no other source, it being my intention that the rents of the said store shall alone and forever be affected to the payment of the said yearly sum of Two Thousand Four Hundred Dollars and that the surplus, if any there be, shall be appropriated to the payment of the insurance, taxes and repairs of the said store.

"And I further ordain that the said store shall be administered during their life time by Pierce Butler and Miss Sarah J. D. Butler his sister, jointly or separately, giving unto them, full power and authority to appoint one or more substitutes in their stead, either by will or otherwise to administer the said property.

"I hereby appoint the said Pierce Butler and Wilmer Shields as executors of this my last will and of any other will which I may have heretofore made; appointing moreover the said Pierce Butler as the sole residuary legatee of all my Estate."

It will be noted that this bequest of $2,400 per annum, to be given out of the rent of the store on Carondelet street, is made "to the present rector of St. Anna Chappel, situate on Esplanade street, in this city, and to his successor in office forever," and the question which gives rise to the controversy between plaintiff and defendant is whether the testator intended this as a bequest to the then rector and his successors for their personal use and benefit, or whether he intended it as a bequest to them in their official capacity, for the use and benefit of the church. If the testator intended this as a personal bequest to the then rector and his successors, if he intended that the revenues from this property go to them as individuals and be appropriated by them as they saw fit for their own personal use and benefit, then the plaintiff, who became rector of the church in May, 1889, and served in that capacity until 1922, owes the church no accounting for the revenues received by him from said property. If, on the other

hand, the testator intended this as a bequest to the rector of the church in his official capacity to be collected and used by him for the benefit of the church over which he presided, then plaintiff must account to the church for the amounts which he received from that source.

From the date on which plaintiff became rector of the church in 1889 to the year 1901, the revenues from that property were collected apparently by the officers of the church and appropriated to the use and benefit of the church. In 1901 the plaintiff, who was then rector of the church, seems to have conceived the idea that the revenues from this property belonged to him personally, and on November 5, 1901, there was a regular meeting of the vestry of St. Anna's Chapel, at which meeting the question whether these revenues belonged to the rector personally or to the church was gone into, and it was decided that they belonged to the rector. At that meeting a resolution was adopted declaring in effect that whereas it had been theretofore considered that the revenues from the Mercer bequest belonged to the church and not to the rector, it then appeared to the officers of the church that an error had been made and that all such revenues as had been collected from the date on which the plaintiff became rector down to the date on which the meeting was held should have gone to the rector personally, and it was acknowledged that the church was indebted unto the rector for the amounts so collected. A committee was appointed to devise ways and means of raising money to reimburse the rector.

Whether the amounts so collected were ever paid to the plaintiff is not disclosed by the record.

The record discloses that during the following years there was some dissatisfaction among the members of the congregation as to the matter of these revenues, and on February 17, 1918, there was a special meeting of the vestry at which the entire matter was gone over again. At that meeting the plaintiff, who was still rector of the church, prepared and submitted a resolution in his own handwriting in which it was recited that: "It having come to the knowledge of the Vestry of St. Anna's Chapel that certain reports are in circulation concerning what is known as the Mercer Bequest, a special meeting of the Vestry was held to consider what should be done in the matter. It was unanimously decided to send to the parishioners a copy of Dr. Mercer's will, which we inclose, and also this circular letter, which is to certify (1) that this whole matter of the Mercer Bequest was investigated and settled by the Vestry of St. Anna's Chapel at a meeting held November 5, 1901 * * * (2) that the Mercer Bequest constitutes a donation pure and simple to whoever may be rector of St. Anna's Chapel and St. Anna's Church has no right or title to any part of that bequest."

The plaintiff contends that if it be held that Dr. Mercer intended that this bequest inure to the benefit of the church, the defendant is estopped to urge its present plea of compensation on account of the above resolutions.

At the time Dr. Mercer made his will in 1872 and at the time it was probated a few years later, Dr. J. F. Girault was rector of the parish or pastor of this church. Dr. Mercer knew him personally and was associated with him in church work. Dr. Girault was succeeded as rector by the plaintiff in 1889. Dr. Mercer could have had no personal interest in the plaintiff or in any other succeeding rector of the church, although it is conceivable and probably true that he was personally attached to Dr. Girault, with whom he was associated. The record discloses that Dr. Mercer had no personal acquaintance with the plaintiff. Dr. Mercer, being a devout Episcopalian and a member of the Episcopal Church known as St. Anna's Chapel, must have been more interested in the welfare of the church than in the personal welfare of some minister about whom he knew nothing personally and who might succeed Dr. Girault as rector. To hold as plaintiff contends that Dr. Mercer intended these bequests to inure to the personal benefit of all succeeding rectors of the church would be tantamount to saying that he was more interested in the personal affairs and the enrichment of the rectors than he was in the church; that he was more interested in men than in a cause.

It is not at all probable that Dr. Mercer wanted the revenue of his property used to enrich individuals who might become rectors of his church long after his death. The more reasonable view is that he intended this bequest to inure to the benefit of the church and that the rectors, who-

ever they might be, would collect and use the money for the church of which they were officers.

According to plaintiff's contention, he was entitled not only to his regular salary as fixed and paid by the church, but in addition thereto was entitled to the rents and revenues of this commercial property.

It will be noted that the bequest was made "unto the present rector of St. Anna Chappel * * * and to his successor in office forever." The use of the word "office" indicates that the testator intended that the bequest attached to the office of rector rather than to the person who might hold that office. In the Protestant Episcopal Church the rector "is a clergyman who is the spiritual head and, legally, the presiding officer of the church" or "a clergyman elected by the members of the parish to have permanent charge of it. He is the official head of the parish and ex-officio head of all parochial organizations." Webster's International Dictionary.

■ The bequest to the rector of the church and his successors in office we think means the same as if it had been made to the wardens and vestrymen or officers of the church. Where a benefit is conferred by bequest or deed upon the officers or trustees of a church or society and their successors in office, a reasonable interpretation of such bequest or deed is that the benefit was intended to inure to the church or society and not to the officers personally.

We think a reasonable interpretation of Dr. Mercer's will is that this bequest was intended for the use and benefit of the church and not for the personal use and benefit of the then rector and those who might succeed him.

■ This being our interpretation of the will, the only question remaining is whether the church is estopped from setting up its plea of payment or compensation on account of the resolutions adopted by its officers. We do not think it is. The adoption of these resolutions was an error of law.

"An error of law can never be alleged as a means of acquiring, though it may be invoked as a means of preventing a loss or of recovering what has been given or paid under such error."

Through an error in the interpretation of Dr. Mercer's will, the officers of the church permitted this plaintiff to collect and appropriate to his own use and benefit large sums of money to which he was not entitled, and the fact that they committed that error does not estop the church from demanding an accounting by the plaintiff for the sums received by him when the church is sued under such circumstances as are here disclosed. The officers of a corporation have no right to donate or give away the assets of the corporation. That, in effect, is what the officers of St. Anna's Chapel did in this case. As a matter of law, they placed a wrong interpretation on Dr. Mercer's will. In effect, they changed the will entirely in so far as this particular bequest

is concerned. This they had no right to do and the church is not estopped by their conduct.

The record shows that not only did this plaintiff collect and retain the revenues from this commercial property from 1901 until 1922, but when the residuary legatees under the Mercer will sold the property, he was paid the sum of $15,000 cash as a consideration for his release of the property from the bequest. Plaintiff has therefore received amounts far in excess of the amount which he claims is due him on back salary.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that plaintiff's demands be rejected in toto and his suit dismissed, at his costs.

O'NIELL, C. J., absent.